842 A.2d 170

IN THE MATTER OF THE APPLICATION OF EL PISCIS, INC., HOLDER OF PLENARY RETAIL CONSUMPTION LICENSE NUMBER 0912–33–090–004 ISSUED BY THE MUNICIPAL BOARD OF ALCOHOLIC BEVERAGE CONTROL OF THE TOWN OF WEST NEW YORK.

Superior Court of New Jersey
Appellate Division

Submitted November 13, 2002—Decided December 4, 2002.

Before Judges SKILLMAN and LEFELT.

*Wolfberg & Wolfberg,* attorneys for appellant El Piscis, Inc. (*Matthew Wolfberg,* of counsel and on the brief).

*David Samson,* Attorney General, attorney for respondent New Jersey Division of Alcoholic Beverage Control (*Lorinda Lasus,* Deputy Attorney General, on the brief).

PER CURIAM.

El Piscis, Inc., the holder of a plenary retail alcohol consumption license issued by the Town of West New York, appeals from orders by the Director of the Division of Alcoholic Beverage Control denying relief under *N.J.S.A.* 33:1–12.18 and *N.J.S.A.* 33:1–12.39. We reverse and remand for further proceedings under *N.J.S.A.* 33:1–12.39.

## I.

The pertinent facts and procedural history follow. On June 10, 1998, El Piscis timely filed its license renewal application for the 1998–99 term. West New York, on June 17, 1998, however, denied El Piscis' application, citing that the police "have reported an investigation concerning the identity of the owner(s) of said license" and "the premises [have] not been in operation for approximately one year." On July 16, 1998, El Piscis appealed the denial of its license renewal to the ABC Division and the matter was transmitted to the Office of Administrative Law (OAL) for a hearing.

The administrative litigation concerning El Piscis' license renewal continued until February 17, 2000 when the OAL settled the dispute and incorporated the settlement into an initial decision. The settlement specified that a particular person would make "[a]n application for renewal" and further provided that "[i]f there has been a change of ownership that the necessary forms for the change of ownership be submitted to [West New York]." The

settlement also indicated that the "location where this license [was] going to be operating out of [was to] be enunciated in said application." The settlement also indicated that if there were no location for the license at the time of renewal, then "the license may be renewed as a 'pocket license.'" The initial decision settlement became final when the Director failed to act within forty-five days. *N.J.A.C.* 1:1–18.6(c).

On March 15, 2000, before the 45 day review period under *N.J.A.C.* 1:1–18.6(c) expired, the ABC Division notified El Piscis that the dispute regarding the 1998–99 license renewal had been resolved and that the action contemplated by the settlement had been taken. The Division also told El Piscis that West New York had advised it that no renewal application for the 1999–2000 license term had been filed.

Consequently, the Division advised El Piscis to seek relief under *N.J.S.A.* 33:1–12.18. It stated that "[w]hen the Division reviews the submission, if sufficient, a Special Ruling will be granted authorizing renewal of the license for 1999–2000 license term." The Division further advised that until a special ruling is issued, "no action [should] be taken by West New York regarding renewal of this license for any license term."

On April 28, 2000, El Piscis filed its petition seeking relief under *N.J.S.A.* 33:1–12.18 for the 1999–2000 term. Under this statute, the Director can grant a new license to applicants who petition for relief before September 28 of the year license renewal is sought, provided timely license renewal was prevented by circumstances beyond the licensee's control.

On May 2, 2000, the ABC Division advised El Piscis to also file a copy of the petition with West New York along with application fees for the 1999–2000 license term. Also, the Division again advised El Piscis that West New York will defer any action pending the Director's determination on the petition.

In addition, El Piscis on May 19, 2000 sought a special ruling from the ABC Director under *N.J.S.A.* 33:1–12.39, permitting

renewal of its inactive license for four license terms commencing with the 2000–2001 term. El Piscis explained that it intended "to use the liquor license for the operation of a restaurant at a location to be determined in the Town of West New York or to sell it. I anticipate that the liquor license will be utilized within the next 1 to 4 years."

The applicant paid its $1,236 renewal fee, and on June 8, 2000, filed its renewal application with West New York for the 1999–2000 term. Because the license was not being actively used at a particular place of business, the application sought renewal as a "pocket license."

On August 7, 2000, the ABC Division determined that it was probably without jurisdiction to issue a special ruling permitting renewal of this license for the 1999–2000 term, but indicated that if El Piscis "can provide a basis on which to conclude that the statutory criteria are satisfied, this Division may either issue a Special Ruling or forward the matter to the Office of Administrative Law for a hearing." After El Piscis explained that because the litigation was pending throughout 1999, it had not sought renewal for the 1999–2000 term, no special ruling was issued, but the matter was transmitted to the OAL for hearing as a contested case.

On September 25, 2001, the OAL issued an initial decision dismissing the petition for a special ruling under *N.J.S.A.* 33:1–12.18 for the 1999–2000 license term. The administrative law judge ruled that El Piscis' license permanently lapsed on September 28, 1999, and that there was no substantial compliance excusing El Piscis' failure to comply with the statute.

On October 18, 2001 the ABC Director affirmed the initial decision dismissing the petition, denied El Piscis' renewal application for the 1999–2000 term, and directed West New York to return ninety-percent of the license fee. The Director then on October 23, 2001 issued another order denying El Piscis' relief under *N.J.S.A.* 33:1–12.39 for the next four years starting with the 2000–2001 license term. The Director concluded that because the

license ceased to exist after June 30, 1999, relief for an inactive license could not be granted. El Piscis then appealed to this court from the October 18 and 23, 2001 decisions.

## II.

We do not view the procedural tangle that ensnared El Piscis as controlled by *N.J.S.A.* 33:1–12.18 or the substantial compliance doctrine. Instead, we believe that the Director should have selected either one of two available means of addressing the prospect that the dispute over the license's renewal would likely continue into subsequent license terms. First, the ABC has a rule authorizing the Director upon "the filing of an appeal from the denial of an application for renewal of a license" to "issue an order ... to show cause why the term of the license should not be extended pending the determination of the appeal." *N.J.A.C.* 13:2–17.9. Second, upon receipt of the settlement initial decision, instead of allowing the forty-five days to run without taking any action, the Director could have required the parties to consider whether to include the 1999–2000 license term within the settlement. We conclude that under the circumstances of this case the Director should have taken either one of these two available courses of action.

We reach this conclusion because when West New York denied renewal of the license on June 17, 1998, the license was expected to terminate on June 30, 1998. Consequently, by June 30, 1998, El Piscis would no longer be the holder of any viable license. In addition, the filing of an appeal does not automatically stay the municipal action. *N.J.A.C.* 13:2–17.8. Thus, any reasonable licensee would have assumed that its license was jeopardized by the municipal action and that further applications for renewal of the lapsed license would have been a waste of money. Any application El Piscis made to renew this license before July 30, 1999, would have most certainly been denied. Only an appeal could possibly eventually salvage the license.

It is unjust to allow this license to expire solely because the licensee neglected to futilely request renewal of its license. A license should not lapse solely because the licensee failed to take what would have been an idle gesture. To determine whether an apparently futile action must nevertheless be taken, the futility of the action is balanced against the administrative needs served by the action. *E.g., MHF Holding Co. v. New Jersey Dep't of Envtl. Prot.*, 314 *N.J.Super.* 87, 101, 713 *A.*2d 1096 (App.Div.1997). From West New York's perspective, it served no purpose for El Piscis to seek renewal of its license for 1999–2000. According to the town, it had already determined that the license in question should not be renewed, and the license had in fact lapsed on June 30, 1998. The record contains no evidence of any changed circumstances after June, 1998. If El Piscis had nevertheless sought renewal, the town would have once again denied renewal and the only possible result would have been for El Piscis to consolidate the 1999–2000 denial with the pending litigation involving the 1998–99 license term. Given the fact that the license's viability was already under litigation, there was no administrative need for the licensee to attempt to renew a license that West New York had already lapsed.

This case is different from *In re CJ 121, Inc.*, 95 *N.J.A.R.*2d (ABC) 100, 1994 WL 814807 (1994), where the licensee failed to seek timely renewal of its license for 1991–92 and was seeking relief under *N.J.S.A.* 33:1–12.18, when the licensee again failed to seek timely renewal of its license for 1992–93. In that case, the Director agreed with the administrative law judge "that the failure of petitioner to file a renewal application for the 1992–93 license term has rendered consideration of its 1991–92 application moot." *CJ 121* did not involve a municipal rejection of a timely filed renewal application. *CJ 121* solely involved dilatory action by the licensee. That is not this case.

Instead of ordering West New York to show cause why the license term should not be extended or requiring the parties to consider including the 1999–2000 term in the initial decision

settlement, the ABC Division advised El Piscis to begin proceedings under *N.J.S.A.* 33:1–12.18, well after September 28 of the year in which the renewal application was required. Thus, the suggested remedy for El Piscis was in fact unavailable because the Director was, at the time of the Division's advice, already without authority to proceed under *N.J.S.A.* 33:1–12.18. *Cavallaro 556 Valley St. Corp. v. Div. of Alcoholic Beverage Control,* 351 *N.J.Super.* 33, 43, 796 *A.*2d 938 (App.Div.2002).

While it cannot be said that the Division affirmatively misled El Piscis into thinking that its petition would be granted, the Division directed the licensee to pursue a remedy that had no viability and at least implied that relief would be possible. Such direction to the licensee in this case, where there was no basis for any substantial compliance argument, was untenable and should not have been advanced.

We are unable to determine the extent of the problem we notice in this appeal. Our research has found two subsequent administrative decisions requiring that licensees appealing denial of a prior renewal continue to seek timely license renewals for all subsequent years the matter remains in administrative litigation. *See In re Application of Hickory Garden Club, Inc.,* OAL Dkt. No. ABC 11031–00, 2002 *WL* 1000015 (N.J. Adm. Apr.25, 2002) and *Landing Realty t/a Nardine's Rest. v. Mun. Bd. of ABC of the City of Hoboken,* OAL Dkt. No. ABC 11020–00, 2002 *WL* 444147 (N.J. Adm. Mar.6, 2002). We recognize that these cases may be distinguished from the matter at hand. In *Nardine's Rest.* the initial denial of renewal resulted from Hoboken's failure to act timely, *N.J.A.C.* 13:2–2.10(b), and the city subsequently revoked the subject license while the matter remained in litigation. In *Hickory Garden Club,* the precise issue raised was whether the Director has authority to toll the statutory renewal time frame limitations. In any event, we suggest to the Director that the issue raised on this appeal would be an appropriate subject for an agency rulemaking.

Accordingly, we reverse the Director's determinations, reinstate the license for 1999–2000 and because of the apparent inactivity of the license remand to the Director to determine whether, under *N.J.S.A.* 33:1–12.39, relief would have been warranted when initially requested in May of 2000. We leave to the Director to determine whether subsequent events regarding this license permit continuing relief under *N.J.S.A.* 33:1–12.39.

Reversed and remanded for further proceedings not inconsistent with this decision. We do not retain jurisdiction.